[Cite as *Illum. Co. v. Burns*, 2014-Ohio-502.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 100235

---

# ILLUMINATING COMPANY

### PLAINTIFF-APPELLEE

vs.

# CLIFFORD BURNS

### DEFENDANT-APPELLANT

---

## JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-778416

**BEFORE:** E.T. Gallagher, J., Celebrezze, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** February 13, 2014

**ATTORNEY FOR APPELLANT**

Mary Malone Rayer
Law Office of William T. Neubert
1422 Euclid Avenue
Hanna Building, Suite 1504
Cleveland, Ohio 44115


**ATTORNEY FOR APPELLEE**

Amanda Rasbach Yurechko
Weltman, Weinberg & Reis Co.
323 West Lakeside Avenue
Suite 200
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} This cause came to be heard on the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1.

{¶2} Defendant-appellant, Clifford Burns ("Burns"), appeals a judgment rendered in favor of plaintiff-appellee, the Illuminating Company, in the amount of $13,584.73, plus statutory interest. We find no merit to the appeal and affirm.

{¶3} In January 2011, Burns was involved in a single car accident and hit a utility pole. The Illuminating Company filed suit against Burns to recover the cost of repairing the pole. Burns admitted that he hit the pole and damaged it but asserted that the damages alleged in the complaint were excessive. The Illuminating Company filed a motion for summary judgment, which was supported by an affidavit and two deposition transcripts. The court granted the motion for summary judgment and stated, in relevant part:

> Defendant admits liability, and the only issue raised was the calculation of damages. While plaintiff attached evidence supporting the amount demanded, defendant provided no evidence creating an issue of material fact as to the accuracy and reasonability of the amount invoiced by plaintiff.

Burns now appeals the order granting summary judgment.

{¶4} We review an appeal from summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact as to the essential element of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). Once the moving party demonstrates entitlement to summary judgment, the burden shifts to the

nonmoving party to produce evidence related to any issue on which the party bears the burden of production at trial. Civ.R. 56(E). Summary judgment is appropriate when, after construing the evidence in a light most favorable to the party against whom the motion is made, reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998).

{¶5} In his sole assignment of error, Burns argues the Illuminating Company failed to prove damages to a reasonable degree of certainty. He contends the sworn testimony provided in support of summary judgment was insufficient because it failed to provide a detailed breakdown of each and every cost added to the calculation.

{¶6} The purpose of a damage award is to make the injured party whole. *Columbus Finance, Inc. v. Howard*, 42 Ohio St.2d 178, 184, 327 N.E.2d 654 (1975). Damages include both direct and indirect costs. Direct costs are the expenses incurred as a result of the actual project and include materials, labor, mileage, and equipment costs. *Ohio Edison Co. v. Peebles*, 7th Dist. Mahoning No. 93 C.A. 92, 1994 Ohio App. LEXIS 3478 (Aug. 1, 1994). Indirect costs are the expenses involved in running a business and are not attributable to any one project. *Complete Gen. Constr. Co. v. Ohio DOT*, 94 Ohio St.3d 54, 57, 2002-Ohio-59, 760 N.E.2d 364. Indirect costs may include salaries of executive or administrative personnel, general insurance, rent, utilities, telephone, depreciation, professional fees, legal and accounting expenses, advertising, and interest on loans. *Id.* Indirect costs of repairs "are a proper element of damage for which recovery

may be had, where such costs can be proved with reasonable certainty and have been correctly made in accordance with sound accounting principles." *Warren Tel. Co. v. Hakala*, 105 Ohio App. 459, 460, 152 N.E.2d 718 (11th Dist.1957), syllabus. *See also Ohio Bell Tel. Co v. Vaughn Bldg. Co.*, 10th Dist. Franklin No. 83 AP-1093, 1984 Ohio App. LEXIS 11645 (Nov. 20, 1984).

{¶7} Burns argues the Illuminating Company failed to establish proof of any damages. In support of his argument, he cites three cases in which the courts found the utilities failed to prove indirect costs with reasonable certainty. For example, in *Toledo Edison Co. v. Czajka*, 6th Dist. Lucas No. L-02-1393, 2003-Ohio-3684, a "witness testified that the annual study from which the indirect costs were calculated takes into consideration other construction projects, not just pole repairs." *Id*. at ¶ 7. The witness testified that the amounts attributed to engineering and supervision salaries and expenses assumed a direct relationship with labor costs but "the witness did not know whether any study had been done to establish the truth of this assumption." Thus, the evidence in *Czajka* was not sufficient to prove damages with reasonable certainty.

{¶8} In *Toledo Edison Co. v. Teply*, 6th Dist. Lucas No. E-02-022, 2003-Ohio-1417, the court found insufficient evidence of indirect costs because the senior accountant for First Energy testified that while some engineering is necessary on every pole replacement, "he had no evidence concerning how much actual supervision or engineering was required for this pole replacement." *Id.* at ¶ 33. In *Ohio Edison Co. v. Beavers*, 11th Dist. Trumbull No. 96-T-5568, 1997 Ohio App. LEXIS 2830 (June 27,

1997), the utility's accountant "could not state what, if any, engineering had been involved * * * or whether any supervisors had been on that particular job." *Id.* at *15. Therefore, the utilities in these cases failed to establish indirect costs with reasonable certainty. *Teply* at ¶ 36; *Beavers* at *5.

{¶9} Here, the Illuminating Company submitted an affidavit of an authorized representative who authenticated the business records relative to its claims. Of these records, a claim invoice indicates the equipment cost to repair the pole totaled $1,457.03. The materials cost $3,493.01. Labor costs totaled $8,634.69. A claims work summary, known as a "Crews Report," identifies the dates and hours of each employee who worked on the repairs. It also identifies the dates and times certain equipment was used and the cost per hour.

{¶10} Tim Wojtowicz ("Wojtowicz"), an accountant employed by the Illuminating Company, and Phillip Smith ("Smith"), the supervisor who worked on the repairs at issue in this case, substantiated the repair costs listed in the Illuminating Company's invoice and Crews Report. Smith testified about the repairs that were performed and explained how the Crews Report accurately reflects the materials used, the hours employees worked, and the hours equipment was used. He further testified that the salaries and wages are set by union contract for each job type.

{¶11} Wojtowicz also verified that the claims invoice accurately reflects the labor hours, vehicle hours, and materials expended on the job. He explained that each material cost reflected in the invoice is the actual cost "out of the warehouse" as entered into the

computer system at that point in time, including depreciation. With respect to direct labor costs, Wojtowicz explained that an "activity price" is determined for each employee based on the employee's classification, i.e. hourly wage, plus benefits (medical, vision, vacation) per hour. Transportation charges are based on the type of vehicle and the number of hours the vehicle used.

{¶12} With respect to indirect costs, Wojtowicz explained that there is a 14.98 percent charge added to all invoices, whether damage claims or construction programs. The 14.98 percent represents the cost of "support functions," which include human resources, accounting, legal, and information technology. The accounting management department determines what cost for these "support functions" should be added to the cost of doing business, i.e., overhead costs. According to Wojtowicz, because Burns's accident occurred in 2011, the 14.98 percent is based on 2010 data. During his deposition, Wojtowicz explained:

> [I]t would be based upon historical information for 2010. And that historical information is the books of First Energy and those books are according to GAAP [generally accepted accounting principles], they are also maintained according to the Federal Energy Regulatory Commission, the Public Utility Commission of Ohio.

(Wojtowicz depo. at page 10.)

{¶13} Wojtowicz further explained that he uses actual numbers as opposed to estimates and that they reflect actual costs; there are no profits built into the calculations. Finally, Wotjowicz testified that the cost data used to determine repair costs "is audited by * * * internal and external auditors," and that the data is reviewed annually. (Wotjowicz

depo. at page 30.) We find this evidence is sufficient to demonstrate that the total repair costs listed in the Illuminating Company's invoice were determined to a reasonable degree of certainty.

{¶14} Accordingly, the sole assignment of error is overruled.

{¶15} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
KENNETH A. ROCCO, J., CONCUR